**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re:<br><br>Amy Marie Neisen, a/k/a Amy M Neisen, a/k/a Amy Neisen, *Debtor*<br><br>Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2002-D, by PHH Mortgage Corporation, *Creditor*<br><br>vs.<br><br>Amy Marie Neisen, a/k/a Amy M Neisen, a/k/a Amy Neisen, *Debtor*<br><br>and<br><br>Carol F Dunbar, *Trustee* | ) | Case No. 22-00993-lmj13<br><br>Chapter: 13 |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

COMES NOW, Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2002-D, by PHH Mortgage Corporation, its subsidiaries, affiliates, predecessors in interests, successors or assigns, ("Creditor"), and in support of its motion, states as follows:

1. Creditor files this motion under Rules 4001 and 9014, Rules of Bankruptcy Procedure. On September 14, 2022, the Debtor filed a Petition under Chapter 13 of the Bankruptcy Code wherein Creditor was listed as a secured creditor as to real property of the Debtor.

2. Jurisdiction is invoked in the District Court under 28 U.S.C. §1334(a) and jurisdiction is proper in this Court pursuant to 28 U.S.C. §1408(1) and §157(b)(2)(G).

3. Amy Marie Neisen ("Debtor", whether one or more) resides at 3 North 13th Street, Marshalltown, IA 50158.

4. Carol F Dunbar is the Trustee duly appointed by law ("Trustee").

5. On November 6, 2002, Amy Marie Neisen executed a promissory note (the "Note") in the principal sum of $63,000.00.

6. Contemporaneously with the execution of the Note, a Mortgage was executed by Amy Marie Neisen to secure repayment of the Note. The Mortgage was filed for record with the Office of the Recorder of Deeds of Marshall County, Iowa, on November 22, 2002, Document No. 0209659. A copy of the Mortgage is attached as Exhibit "B". The Property is legally described as follows:

> **THE SOUTH 45 FEET OF THE NORTH 90 FEET OF LOTS TEN AND ELEVEN IN BLOCK NINE IN ELECTRIC ADDITION TO THE TOWN OF MARSHALL, MARSHALL COUNTY, IOWA**, commonly known as 3 North 13th Street, Marshalltown, Iowa 50158 (the "Property")

7. Creditor is the holder of the note secured by the security instrument and lien in the real property through its agent/custodian.

8. The Debtor has claimed the Property as exempt under 11 U.S.C. §522.

9. The approximate total balance due on the Promissory Note is in the amount of $49,823.27, an exact payoff is available upon request of an appropriate party.

10. The Plan provides that the pre-petition arrearage due on the Note would be paid to the Trustee and Debtor would pay the post-petition payments directly to Creditor.

11. The Debtor has failed to pay the post-petition payments due on the promissory note held by the Creditor. The following amounts are now due and owing:

| DESCRIPTION | AMOUNT |
|---|---|
| (3) Late Payments @ $686.20 (10/01/2022 - 12/01/2022) | $2,058.60 |
| MFR Filing Fee | $188.00 |
| MFR Attorney Fees | $1,050.00 |
| Total | $3,296.60 |

12. These amounts due and owing are in addition to any amounts that have come due after the filing of this Motion pursuant to the terms of the Promissory Note and Security Instrument.

13. The Debtor has failed to cure the delinquency and the estate lacks sufficient assets from which the delinquency can be cured. Creditor's interest in the real property lacks adequate protection.

14. The Debtor has materially defaulted with respect to payment of Creditor's secured claim and has caused unreasonable delay, which is prejudicial to this creditor.

15. To remedy this prejudicial delay to creditor, an Order for Relief from the Automatic Stay

should be granted that is effective immediately without a stay of enforcement pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

16.     Creditor seeks relief for the purpose of exercising its remedies available under state law, up to and including foreclosure of its mortgage against Debtor(s) interest in the Property. Creditor further seeks relief in order to contact Debtor(s), at its option, by telephone or by written correspondence, to offer, provide and enter into a forbearance agreement, deed in lieu of foreclosure, loan modification, refinance agreement or other loan workout/loss mitigation agreement.

17.     Creditor specifically requests permission from this Honorable Court to communicate with the Debtor(s) and Debtor(s)' counsel to the extent necessary to comply with applicable nonbankruptcy law.

18.     Creditor requests that any order granting it relief from the automatic stay contain a provision that the order shall survive any conversion of this case to a Chapter 7 proceeding.

**WHEREFORE**, Creditor, its successors or assigns, prays that it be granted Relief from the Automatic Stay of 11 U.S.C. §362 to enforce its lien granted in the Mortgage, and for such other and further relief, as the Court deems proper.


SOUTHLAW, P.C.

*/s/Wendee Elliott-Clement*

Wendee Elliott-Clement, AT0011311
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
iabksdecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

## CERTIFICATE OF MAILING/SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was filed electronically on this January 10, 2023 with the United States Bankruptcy Court for the Southern District of Iowa, and shall be served on the parties in interest via email by the Court pursuant to CM/ECF as set out on the Notice of Electronic Filing as issued by the Court and shall be served by U.S. Mail, First Class, postage prepaid, on those parties directed by the Court on the Notice of Electronic Filing issued by the Court and as required by the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court.

Amy Marie Neisen
3 North 13th Street
Marshalltown, IA 50158
**DEBTOR**

Shanon Zisman
401 W Kirkwood Ave
Fairfield, IA 52556
**ATTORNEY FOR DEBTOR**

Carol F Dunbar
2616 Orchard Dr Ste B
Cedar Falls, IA 50613
**TRUSTEE**

Deanna R Bachman
505 5th Ave
Ste 406
Des Moines, IA 50309

Office of the United States Trustee
Federal Bldg, Room 793
210 Walnut Street
Des Moines, IA 50309
**U.S. TRUSTEE**

SOUTHLAW, P.C.

*/s/Wendee Elliott-Clement*
Wendee Elliott-Clement, AT0011311
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
iabksdecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re:<br><br>Amy Marie Neisen, a/k/a Amy M Neisen, a/k/a Amy Neisen, *Debtor*<br><br>Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2002-D, by PHH Mortgage Corporation, *Creditor*<br><br>vs.<br><br>Amy Marie Neisen, a/k/a Amy M Neisen, a/k/a Amy Neisen, *Debtor*<br><br>and<br><br>Carol F Dunbar, *Trustee* | ) | Case No. 22-00993-lmj13<br><br>Chapter: 13 |

**<u>SUMMARY OF EXHIBITS AND CERTIFICATE OF SERVICE</u>**

The following Exhibits referenced in the Attached Pleading filed on behalf of Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2002-D, by PHH Mortgage Corporation are attached electronically.

1. Exhibit A, the Note for the Property that is the subject of the Pleading.

2. Exhibit B, the Mortgage for the Property that is the subject of the Pleading.

3. Exhibit C, the Assignment of Mortgage.

4. Exhibit D, the American Home Mortgage Servicing Inc. – Security Retention Agreement.

5. Exhibit E, the Post-Petition Payment History.

SOUTHLAW, P.C.

*/s/Wendee Elliott-Clement*

Wendee Elliott-Clement, AT0011311
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
iabksdecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

**CERTIFICATE OF MAILING/SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing was filed electronically on this January 10, 2023 with the United States Bankruptcy Court for the Southern District of Iowa, and shall be served on the parties in interest via email by the Court pursuant to CM/ECF as set out on the Notice of Electronic Filing as issued by the Court and shall be served by U.S. Mail, First Class, postage prepaid, on those parties directed by the Court on the Notice of Electronic Filing issued by the Court and as required by the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court.

Amy Marie Neisen
3 North 13th Street
Marshalltown, IA 50158
**DEBTOR**

Shanon Zisman
401 W Kirkwood Ave
Fairfield, IA 52556
**ATTORNEY FOR DEBTOR**

Carol F Dunbar
2616 Orchard Dr Ste B
Cedar Falls, IA 50613
**TRUSTEE**

Deanna R Bachman
505 5th Ave
Ste 406
Des Moines, IA 50309

Office of the United States Trustee
Federal Bldg, Room 793
210 Walnut Street
Des Moines, IA 50309
**U.S. TRUSTEE**

SOUTHLAW, P.C.

*/s/Wendee Elliott-Clement*

Wendee Elliott-Clement, AT0011311
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
iabksdecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

File No. 236503
Case No: 22-00993-lmj13



PHH
MORTGAGE

PHH Mortgage Services
PO Box 24605
West Palm Beach, FL 33416

Tel 800-449-8767
Fax 856-917-8003

****** NOTIFICATION OF CONTACT INFORMATION******

PHH Mortgage Corporation, as mortgage loan servicer, has established a toll-free telephone number for inquiries related to bankruptcy loans. The toll-free telephone number is (866) 947-7729 and representatives can be reached on Monday - Friday between the hours of 8:30 AM - 5:00 PM Eastern Time.

**ADDENDUM**

PHH Mortgage Corporation services the loan on the Property referenced in this document. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Creditor. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or assignee of the Mortgage.



PHH Mortgage Services
PO Box 24605
West Palm Beach, FL 33416

Tel 877-688-7116
Fax 856-917-8003

# **IMPORTANT NOTICE**

Upon written request, PHH Mortgage Services will provide the following information regarding the subject loan:

* A copy of the payment history through the date the account was last less than 60 days past due.
* A copy of the note.
* If foreclosure has been commenced or a POC has been filed, copies of any assignments of mortgage or deed of trust required to demonstrate the right to foreclose on the borrower's note under applicable state laws.
* The name of the investor that holds the loan.

Requests for this information/documentation can be sent to us at the following address:

PHH Mortgage Services
Attn: Bankruptcy Department
PO Box 24605
West Palm Beach, FL 33416

This notice is being provided for informational and compliance purposes only. It is not an attempt to collect a debt.

Loan Number: [redacted]

# ADJUSTABLE RATE NOTE

## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| November 6, 2002 | Orange | CA |
|---|---|---|
| [Date] | [City] | [State] |

3 NORTH 13th ST, MARSHALLTOWN, IA 50158
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$ 63,000.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.990 %**. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on **January 1, 2003** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **December 1, 2032** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my payments at: **505 City Parkway West, Suite 100 Orange, CA 92868**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 461.84** . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **December, 2004** , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **five and one-quarter** percentage point(s) (**5.250 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials: AN

Exhibit A

Loan Number: [redacted]

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.990 % or less than 7.990 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **one** percentage point(s) (**1.000 %**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater **13.990%** or less than **7.990%** .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(5) PREPAYMENT PRIVILEGE**

I may prepay the principal balance of this loan at anytime, in full or in part, without the imposition of a prepayment penalty by the lender.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time which I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Initials: AN

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. GOVERNING LAW PROVISION**

This Note and the related Security interest are governed by the Alternative Mortgage Transaction Parity Act of 1982, 12 USC §3802 et. seq., and, to the extend not inconsistent therewith, Federal and State law applicable to the jurisdiction of the Property.

**Oral agreements, promises or commitments to lend money, extend credit, or forebear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the Instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| Amy Neisen (Seal) | (Seal) |
| BORROWER AMY NEISEN | BORROWER |
| (Seal) | (Seal) |
| BORROWER | BORROWER |

PAY TO THE ORDER OF

WITHOUT RECOURSE
AMERIQUEST MORTGAGE COMPANY

BY: ______________________
KIRK LANGS, C.O.B., C.E.O.

BY: ______________________
JOHN P. GRAZER, E.V.P., C.F.O.

Prepared By: Ameriquest Mortgage Company
Robert Cunningham
4601 Westown Parkway, # 124,West Des Moines, IA 50266

(515)221-2214

Joan A. Smith-Legg

Return To:

Ameriquest Mortgage Company
P.O. Box 11507
Santa Ana, CA 92711

INST. NO. REC. MGMT. 1.00
INDEXED FEE
REC. FEE 80 AUD. FEE

[Space Above This Line For Recording Data]

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **November 6, 2002**, together with all Riders to this document.
**(B) "Borrower"** is **AMY NEISEN**

Borrower is the mortgagor under this Security Instrument.

Exhibit B

(C) "**Lender**" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware .
Lender's address is 1100 Town and Country Road, Suite 200 Orange, CA 92868
.

Lender is the mortgagee under this Security Instrument.
(D) "**Note**" means the promissory note signed by Borrower and dated November 6, 2002 .
The Note states that Borrower owes Lender sixty-three thousand and 00/100 Dollars
(U.S. $63,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December 1, 2032 .
(E) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(J) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "**Escrow Items**" means those items that are described in Section 3.
(L) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(N) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:

(O) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to Lender, with power of sale, the following described property located in the County of MARSHALL :

[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

THE SOUTH 45 FEET OF THE NORTH 90 FEET OF LOTS TEN AND ELEVEN IN BLOCK NINE IN ELECTRIC ADDITION TO THE TOWN OF MARSHALL, MARSHALL COUNTY, IOWA

Parcel ID Number: [redacted] which currently has the address of
3 NORTH 13th ST [Street]
MARSHALLTOWN [City], Iowa 50158 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

[redacted]
Initials HN

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

Initials:





Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith

Initials:



by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law

Initials

requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or

Initials: ________




regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement

Initials: RV 



provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Initials:



any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in



connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to 

Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



Initials



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Borrower waives any right of exemption as to the Property.

**25. HOMESTEAD EXEMPTION WAIVER. I UNDERSTAND THAT HOMESTEAD PROPERTY IS IN MANY CASES PROTECTED FROM THE CLAIMS OF CREDITORS AND EXEMPT FROM JUDICIAL SALE; AND THAT BY SIGNING THIS MORTGAGE, I VOLUNTARILY GIVE UP MY RIGHT TO THIS PROTECTION FOR THIS MORTGAGED PROPERTY WITH RESPECT TO CLAIMS BASED UPON THIS MORTGAGE.**

[signature] 11/6/02

| Borrower AMY NEISEN | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

**26. Redemption Period.** If the Property is less than 10 acres in size and Lender waives in any foreclosure proceeding any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 6 months. If the court finds that the Property has been abandoned by Borrower and Lender waives any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 60 days. The provisions of this Section 26 shall be construed to conform to the provisions of Sections 628.26 and 628.27 of the Code of Iowa.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_________________________

_________________________

[signature] (Seal)
AMY NEISEN -Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

_________________________ (Seal)
-Borrower

**STATE OF IOWA,** Jasper **County ss:**

On this 6th day of Nov. 2002,
before me, a Notary Public in the State of Iowa, personally appeared

Amy Neisen

to me personally known to be the person(s) named in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires: 2/12/4

RAINBOW PENLEY
#707712
MY COMMISSION EXPIRES
2/12/4

Notary Public in and for said County and State

AN

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 6th day of November , 2002 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

3 NORTH 13th ST, MARSHALLTOWN, IA 50158
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **7.990 %**. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of December, 2004 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials AN

Loan Number: [redacted]

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **five and one-quarter** percentage points ( **5.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.990% or less than 7.990%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one( **1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.990% or less than **7.990%.**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials AN

Loan Number: [redacted]

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

Amy Neisen (Seal)
Borrower AMY NEISEN

_______________ (Seal)
Borrower

_______________ (Seal)
Borrower

_______________ (Seal)
Borrower

Loan Number: [redacted]

**Unique Doc ID: 249776**
**Recorded: 2/18/2009 at 2:28:29.440 PM**
**Fee Amount: $7.00**
**Revenue Tax:**
**Marshall County, Iowa**
**Kathleen K. Baker - Recorder**
**Doc. Number: 200900000821**

When Recorded Return To:
AMERICAN HOME MTG SERVICING
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

CRL L#: [redacted]
Assignee L#: [redacted]
Investor L#: [redacted]
Custodian: 85
Effective Date: 02/11/2009

**Prepared by: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR AMERIQUEST MORTGAGE COMPANY, WHOSE ADDRESS IS 10801 E. 6TH STREET , RANCHO CUCAMONGA, CA 91730, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, AMERIQUEST MORTGAGE SECURITIES INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2002-D, UNDER THE POOLING AND SERVICING AGREEMENT DATED DECEMBER 1, 2002, WHOSE ADDRESS IS 1761 EAST ST. ANDREW PLACE , SANTA ANA, CA 92705-4934, (ASSIGNEE)**
Said mortgage dated 11/06/2002, executed by **AMY NEISEN (grantee)** to **AMERIQUEST MORTGAGE COMPANY (grantor)** and recorded in Book , page or Doc # 0209659 in the office of the Recorder of MARSHALL, Iowa.

THIS 13TH DAY OF FEBRUARY IN THE YEAR 2009
**CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR AMERIQUEST MORTGAGE COMPANY**

BRYAN BLY VICE PRESIDENT

STATE OF FLORIDA COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me THIS 13TH DAY OF FEBRUARY IN THE YEAR 2009 by BRYAN BLY, personally known to me to be the VICE PRESIDENT of CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR AMERIQUEST MORTGAGE COMPANY, a corporation, on behalf of the corporation.

Bobbie Jo Stoldt Notary Public
Commission Expires: 11/06/2011

BOBBIE JO STOLDT
MY COMMISSION # DD731909
EXPIRES November 06, 2011
(407) 398-0153
FloridaNotaryService.com

Exhibit C

# American Home Mortgage Servicing, Inc.
## SECURITY RETENTION AGREEMENT
*(Providing for a Fixed Interest Rate)*

Re: Loan Number: [redacted]
Property Address: **3 NORTH 13TH ST, MARSHALLTOWN, IA 50158**
Borrower(s): **AMY NEISEN**

This Security Retention Agreement (hereinafter "**Agreement**"), is made and entered into as of **December 1, 2011** (the "**Effective Date**") by and between **American Home Mortgage Servicing, Inc.** (hereinafter "**Loan Servicer**") and **AMY NEISEN** (hereinafter collectively referred to as "**Borrowers**").

**RECITALS:**

Borrowers executed that certain promissory note (hereinafter "**Note**") and mortgage, deed of trust or deed to secure debt (hereinafter "**Security Instrument**") on or about **November 06, 2002** in the original principal amount of U.S **$63,000.00**, (hereinafter collectively referred to as "**Loan**" or "**Loan Documents**"); and

Borrowers secured the Loan by virtue of the Security Instrument, covering the premises commonly known as **3 NORTH 13TH ST, MARSHALLTOWN, IA 50158** (hereinafter referred to as "**Property**"); and

Borrowers debts have been discharged pursuant to a Chapter 7 bankruptcy, but Loan Servicer retained and reserved its right under the Security Instrument to foreclose on the Property; and

Borrowers have informed Loan Servicer that it wishes to remain in the Property and continue to make payments on the Loan; and

Loan Servicer has stated that it will forego pursuit of the legal remedies available to it, provided that Borrowers execute and fulfill the terms of this Agreement.

**AGREEMENT:**

NOW THEREFORE, in consideration of the Loan Servicer forgoing pursuit of its legal remedies under the Security Instrument relating to foreclosure and sale of the Property, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrowers understand, acknowledge, covenant and agree as follows:

1. **Recitals:** The above recitals are true and correct and incorporated herein by reference.

2. **No Personal Liability:** ***Since Borrowers' debts have previously been discharged pursuant to a Chapter 7 bankruptcy and since Borrowers did not sign an agreement reaffirming the Loan, this Agreement is not to be construed as an attempt to collect a debt from Borrowers personally. Borrowers understand and Loan Servicer acknowledges that Loan Servicer has no right and no intention to enforce the Loan against Borrowers and that Loan Servicer's only recourse, if the Loan is not current as set forth in the Loan Documents and this Agreement, is to foreclose on the Property.***

3. **Forbearance by Loan Servicer:** Even though Borrowers are no longer personally liable to repay the Loan, Loan Servicer reserves its right under the Security Instrument to foreclose on the Property, which Borrowers acknowledge and agree they pledged as security for the Loan. Borrowers hereby request that Loan Servicer forbear from pursuing foreclosure and enter into this Agreement, which specifies the steps

Exhibit D

they must take in order to allow them to retain the Property. In consideration of Borrowers' agreement to abide, and only for so long as they continue to abide, by all of the terms and conditions of this Agreement, Loan Servicer hereby agrees to forbear from foreclosing on the Property.

4. **Payments:** In consideration of Loan Servicer forbearing from foreclosing and allowing Borrowers to remain in the Property, Borrowers must make monthly Property retention payments ("**Payment**" or "**Payments**") in the amounts and by the dates, and in accordance with the terms and conditions, as set forth in this Agreement.

   a. As of the Effective Date, the amount payable under the Note and the Security Instrument is U.S. **$72,099.27** (the "**New Principal Balance**"), consisting of the unpaid amount(s) loaned to Borrowers by Lender plus any accrued and unpaid interest and other amounts capitalized as set forth in Schedule "A," attached hereto and made a part hereof.
   b. Borrowers shall pay an earnest money payment (the "**Deposit**") in the amount of U.S. **$0.00**, which Deposit must be received by Loan Servicer no later than 5:00 P.M. Eastern Time, **N/A**, either: (i) via overnight mail sent to the attention of **American Home Mortgage Servicing, Inc., 4875 Belfort Rd, Jacksonville, FL 32256**, in the form of guaranteed funds (certified check, cashiers check or money order) made payable to **American Home Mortgage Servicing, Inc.**, or (ii) via Western Union "quick collect" to Code City: **AHMSI**, Code State: **TX**.
   c. The Deposit shall be deducted from the New Principal Balance, for a total outstanding balance on the Loan of U.S. **$72,099.27** (the "**Reduced Principal Balance**").
   d. Interest shall be charged on the Reduced Principal Balance at the yearly rate of **4.100%**, from the Effective Date until **December 1, 2032** (the "**Maturity Date**").
   e. Borrowers shall make Payments of principal and interest (plus any amounts due for taxes and insurance as set forth in Schedule "A") in the amount of U.S. **$427.20**. All Payments must be received by Loan Servicer, clearly marked with the above-referenced Loan number, no later than 5:00 P.M. Eastern Time, beginning on **January 1, 2012**, and continuing on the same date of each and every succeeding month until the Reduced Principal Balance and interest are paid in full. If the Loan is an adjustable-rate mortgage ("ARM") loan and Borrower receives an ARM adjustment notice prior to the Payment beginning date indicated in the preceding sentence, Borrowers should ignore such notice and make Payments in accordance with this Agreement. If on the Maturity Date, Borrowers still owe amounts under the Loan, as amended by this Agreement, Borrowers will pay these amounts in full on the Maturity Date.
   f. Payments are subject to increase at any time pursuant to paragraphs 5 and 6 below.
   g. As to each and every Payment made under this Agreement, ***time shall be strictly of the essence and there shall be no grace period.***

5. **Additional Fees and Costs; Increase in Payment:**

   a. If not prohibited by the law of the state(s) where the Property and Borrower are located, all additional fees, costs, expenses and charges relating to the Loan that have not been billed to or incurred by Loan Servicer or debited to the Loan account as of the Effective Date (including but not limited to late fees, appraisal and broker price opinion fees, property inspection fees, Loan Servicer advances for payment of Borrowers' taxes and/or insurance, attorney fees and expenses, collection fees and any other expenses incurred by Loan Servicer to protect its security interest in the Property), or clerical errors later discovered in the calculation of the Payments, (all of which fees, expenses, charges and errors, together with late charges, are collectively referred to as "**Additional Costs**"), are not included in the Payment amount and must be paid by Borrowers in order to fully satisfy the terms and conditions of this Agreement.
   b. In order to ensure payment by Borrowers of such Additional Costs, Loan Servicer may, where not

prohibited by the law of the state(s) where the Property and Borrower are located, upon written notice by Loan Servicer to Borrowers and in Loan Servicer's sole and absolute discretion, either: (i) demand immediate payment in full of the Additional costs, (ii) add such Additional Costs to the Reduced Principal Balance, or (iii) add a prorata amount of the Additional Costs to the Payment in an amount necessary either to pay the Additional Costs by a certain date as specified in such written notice or to pay the Loan off by the Maturity Date.

6. **Taxes and Hazard Insurance; Increase in Payments:** Should Loan Servicer require Borrowers, pursuant to the terms of the Loan Documents, to establish an impound account with Loan Servicer for payment of taxes and insurance, or should the monthly contribution to any existing impound account increase pursuant to a periodic escrow analysis, the Payments may increase accordingly. Should the monthly contribution to any existing impound account ***decrease*** pursuant to a periodic escrow analysis, the Payments will decrease accordingly.

7. **Effect of Agreement; Forbearance:** ***This Agreement shall be of absolutely no force or effect, and no action will be taken by Loan Servicer to forbear from foreclosing on the Property, or to postpone the foreclosure or sale of the Property (if applicable), unless and until Loan Servicer has received both this Agreement, fully executed by Borrowers, and any required Deposit in the form and in the manner as outlined in subparagraph 4b above by no later than 5:00 P.M. Eastern Time, December 9, 2011.*** This Agreement is not considered "received" by Loan Servicer unless and until it has been internally date stamped by Loan Servicer and delivered in hand to The Home Retention Team at **Attn: HRF Closers, 4875 Belfort Road Suite 130 Jacksonville, FL 32256.**

8. **Material Breach and Termination of Agreement:** Borrowers shall be considered to be in material breach of this Agreement and this Agreement shall automatically terminate under any of the following circumstances:

   a. Borrowers fail to strictly comply with any of the terms of this Agreement or the Loan Documents as revised by this Agreement.
   b. The Property is abandoned or left vacant for more than sixty (60) days.
   c. Borrowers transfer any interest in the Property without Loan Servicer's prior written consent.

9. **Effect of Termination:** If this Agreement is terminated due to material breach as set forth above, the Loan Servicer shall be entitled to pursue its remedies pursuant to the terms and conditions of the Security Instrument as if this Agreement had never existed.

10. **Advice of Attorney:** Borrowers warrant and represent that: (i) in executing this Agreement they have relied upon legal advice from the attorney of their choice, (ii) this Agreement has been read by Borrowers and such attorney, and its consequences (including risks, complications, and costs) have been completely explained to Borrowers by that attorney, and (iii) Borrowers fully understand the terms of this Agreement.

11. **Loan Documents:** All of the terms and conditions of the Security Instrument shall remain in full force and effect except as expressly modified by this Agreement. Nothing contained in this Agreement shall be construed to impair the Security Instrument or affect or impair Loan Servicer's rights or powers under the Security Instrument to recover any sum due under the terms of this Agreement, including any Additional Costs otherwise permitted by law. Borrowers will comply with all covenants, agreements, and requirements of the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the Effective Date:

    a. All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note.

b. All terms and provisions of any adjustable rate rider, or other instrument or document (if any) that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

12. **Notice:** Any notice by Loan Servicer to Borrowers under this Agreement shall be deemed given if delivered by regular, certified or overnight mail to the Property address as it appears in this Agreement.

13. **Severability:** To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as so modified, legal and enforceable under applicable law, provided that, should such modification or deletion materially diminish the benefit of this Agreement to either Loan Servicer, in its sole discretion and election, or Borrowers, in their sole discretion and election, the Agreement shall, only after written notice given by the electing party to the other party, be of no force or effect and the relationship of Loan Servicer and Borrowers shall be entirely governed by the provisions of the Loan Documents.

**NOTICE TO BORROWERS WITH ADJUSTABLE-RATE LOANS:** For Borrowers with an adjustable-rate loan, please read this notice carefully. In accordance with subparagraphs 11(a) and (b) of this Agreement, you (Borrowers) understand that the Loan is modified from an adjustable-rate loan to a fixed-rate loan. An adjustable-rate loan differs from a fixed-rate loan. With a fixed-rate loan, the interest rate stays the same during the life of the loan. With an adjustable-rate loan, the interest rate changes periodically, in relation to an index and a margin, and Payments may go up or down accordingly. **IF INTEREST RATES DECREASE, AN ADJUSTABLE-RATE LOAN COULD BE LESS EXPENSIVE OVER A LONG PERIOD THAN A FIXED-RATE LOAN. YOU UNDERSTAND THAT BY MODIFYING THIS LOAN TO A FIXED-RATE LOAN, YOU ARE FOREGOING THIS POTENTIAL ADVANTAGE.**

IN WITNESS WHEREOF, the undersigned has/have caused this Agreement to be executed as of the date written below.

Amy Neisen 12/6/11 (Seal)
**AMY NEISEN** - Borrower / Date

**American Home Mortgage Servicing, Inc.**

By: ______________________ Date: ____________
Name:
Title:

# ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number [redacted] Date: **November 25, 2011**

Borrower(s): **AMY NEISEN**

Property Address: **3 NORTH 13TH ST, MARSHALLTOWN, IA 50158**

Servicer: **American Home Mortgage Servicing, Inc.**

In consideration of **American Home Mortgage Servicing, Inc.** (the "Servicer") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Servicer, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Servicer, to enable Servicer to modify the Loan in accordance with the guidelines, guidance, or required servicing standards ("Servicing Standards") of (a) an investor, note holder, guarantor, or mortgage insurer associated with the Loan, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority, or (b) any Making Home Affordable program, including without limitation the Home Affordable Modification Program.

The Borrower agrees to comply with all such requests made by the Servicer within 30 days of receipt of written request from the Servicer. Borrower agrees to assume all costs that may be incurred by the Servicer, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable under the Servicing Standards.

Amy Neisen 12/6/11

**AMY NEISEN** Date

______________________________ Date

______________________________ Date

______________________________ Date

| Name: | Amy Marie Neisen | | | | |
|---|---|---|---|---|---|
| BK Case Number: | 22-00993-lmj13 | | | | |
| Filing Date: | 09/14/2022 | | | | |
| **Due Date** | **Total Payment** | **Principal & Interest** | **Escrow** | **Optional Products** | **NOPC Filed Date** |
| 10/01/2022 | $ 686.20 | $ 427.20 | $ 259.00 | $ - | |
| 11/01/2022 | $ 686.20 | $ 427.20 | $ 259.00 | $ - | |
| 12/01/2022 | $ 686.20 | $ 427.20 | $ 259.00 | $ - | |
| | $ - | | | $ - | |
| **Total Due** | **$ 2,058.60** | **$ 1,281.60** | **$ 777.00** | **$ -** | |

Exhibit E